1

2

3

4

5

6

**FILED & ENTERED**

**APR 22 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY vandenst DEPUTY CLERK**

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

10

11

In re:

12

ORCHID CHILD PRODUCTIONS, LLC,

13

Debtor.

14

15

16

17

18

19

20

21

22

23

24

WHOSE DOG R U PRODUCTIONS, INC.,

25

Plaintiff,

26

vs.

27

EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE,

28

Defendant.

Case No. 2:20-bk-21080-RK

Chapter 7

Adv. No. 2:21-ap-01212-RK

**MEMORANDUM DECISION AND ORDER ON (1) MOTION OF COUNTERCLAIM-DEFENDANTS WHOSE DOG PRODUCTIONS, LLC, AND JAMES FRANCO TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS AND (2) REQUEST OF COUNTERCLAIMANT EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE, FOR SANCTIONS**

Hearing
Date:  March 26, 2024
Time:  1:30 p.m.

Place:  Courtroom 1675
   Roybal Federal Building
   255 East Temple Street
   Los Angeles, CA  90012

EDWARD M. WOLKOWITZ, Chapter 7
Trustee,

                              Counterclaimant,

  vs.

WHOSE DOG R U PRODUCTIONS,
INC., and JAMES FRANCO,

                   Counterclaim-Defendants.

      This adversary proceeding came on for hearing on March 26, 2024 before the undersigned United States Bankruptcy Judge on the motion of counterclaim-defendants Whose Dog R U Productions, Inc. (Whose Dog), and James Franco (Franco) to compel abstention and to stay proceedings and the request of counterclaimant Edward M. Wolkowitz, Chapter 7 Trustee (Trustee), for sanctions.  Appearances were made as noted on the record.  Following the hearing on March 26, 2024, the parties, Whose Dog and Franco, and Trustee, filed post-hearing briefs on April 2, 2024 to address the tentative ruling on the motion posted on the court's website before the hearing and the arguments made at the hearing.  After the filing of the post-hearing briefs, the court took the motion and the request for sanctions under submission.

      Having considered the moving, opposing and reply papers and the post-hearing briefs relating to the motion and the request for sanctions and the oral arguments of the parties at the hearing on March 26, 2024, the court makes the following rulings.

      Whose Dog and Franco in the motion seek an order compelling Trustee to submit to binding arbitration before the American Arbitration Association all issues and disputes alleged in the Counterclaim filed in this adversary proceeding [1] and further seek an order staying all proceedings in this adversary proceeding pending the conclusion of the arbitration and/or a final determination of the arbitrability of the

---

[1]  The "Counterclaim" filed by Trustee consists of nine separate claims for relief against Whose Dog and/or Franco. Docket No. 88.  Docket entries refer to documents filed in this adversary proceeding unless otherwise noted, such as in the main bankruptcy case of Debtor Orchid Child.

disputes.  Motion, Docket No. 104 at 3 (internal page citation at 2).  Whose Dog and

Franco contend that the claims in the Counterclaim are arbitrable pursuant to the written

agreement between Debtor Orchid Child Productions, LLC (Orchid Child), and Whose

Dog titled "Franco, A Documentary," and stating that the agreement contained the

following provision:

> 14.  Governing Law/Arbitration:  The terms and conditions of this Agreement shall be interpreted and governed by California law applicable to contracts entered into and to be wholly performed in California without reference to choice of law rules.  The parties consent to the jurisdiction of the State of California. **Any action, controversy, claim, dispute, suit or transactions contemplated by, this Agreement ("Action") is subject to binding arbitration in English in Los Angeles, California, pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") as said rules may be amended from time to time with full rights of discovery as permitted in accordance with California law.**  Lender [Whose Dog], Artist [Franco] and Company [Orchid Child], each as to and for the benefit of the other, hereby irrevocably submit to the jurisdiction of the courts of the State of California, Los Angeles County and the United States for the purpose of any Action, and the prevailing party/parties all reasonable outside attorney's fees and costs (including expert costs) in bringing or defending such Action.  Any award shall be final, binding, and non-appealable . . . .

Motion, Docket No. 104 at 6 (internal page citation at 1) (emphasis in original), quoting

Agreement, Exhibit 1 to Counterclaim (Docket No. 88).

    In support of the motion to compel arbitration and to stay proceedings, Whose

Dog and Franco cite and rely upon the Federal Arbitration Act (AAA), 9 U.S.C. §§ 1-14,

and decisions of the United States Supreme Court in *Shearson/American Express, Inc.,*

*v. McMahon,* 482 U.S. 220 (1987) and *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).

Motion, Docket No. 104 at 16-22 (internal page citation at 11-17).  Whose Dog and

Franco argue that "[h]ere, the federal policy favoring enforcement of arbitration

provisions is especially strong as an Arbitration will involve a dispute regarding state law

and contract interpretation claims that arose before and independent of the current

bankruptcy case."  *Id.* at 17 (internal page citation at 12).  That is, Whose Dog and

Franco argue that arbitration should be compelled because the claims in Trustee's

Counterclaim are non-core and/or "fall squarely under the arbitration clause."  *Id.* at 17-

21 (internal page citation at 12-16).

The claims for relief in Trustee's Counterclaim (Docket No. 88) are as follows: (1) first claim for relief for declaratory relief regarding ownership of film footage of an unfinished film for the "Franco, A Documentary" motion picture [2] and the related copyright; (2) second claim for relief for declaratory relief that Trustee may sell the film footage and related copyright free and clear of the interests of Whose Dog and Franco; (3) third claim for relief against Whose Dog and Franco for unjust enrichment; (4) fourth claim for relief against Whose Dog and Franco for breach of contract; (5) fifth claim for relief against Whose Dog and Franco for anticipatory breach of contract; (5) sixth claim for relief against Whose Dog and Franco for promissory estoppel; (7) seventh claim for relief against Whose Dog and Franco for breach of the covenant of good faith and fair dealing; (8) objection to the proof of claim of Whose Dog; and (9) objection to the proof of claim of Franco.  Counterclaim, Docket No. 88. [3]

Whose Dog and Franco contend that arbitration should be compelled as to Trustee's fourth through nine claims for relief because these claims are noncore, that is, nonbankruptcy state law causes of action because they were raised in the prepetition arbitration that Whose Dog commenced as such claims are independent of Debtor Orchid Child's bankruptcy case and do not arise under any bankruptcy statute or rule. Motion, Docket No. 104 at 20-21 (internal page citation at 15-16).  Whose Dog and Franco argue that the eighth and ninth claims for relief in Trustee's Counterclaim are noncore because these claims are based on the alleged breach of the agreement by Whose Dog and Franco and the claim of Franco that Orchid Child wrongfully used his

---

[2] The parties do not dispute that the existence of unfinished film footage from the unfinished film, "Franco, A Documentary."  Complaint, Docket No. 1, filed on October 12, 2021, ¶ 7; Answer thereto, Docket No. 16, filed on November 11, 2021.

[3] Some of these claims were asserted as claims for relief in Debtor Orchid Child's Answering and Counterclaims filed in Whose Dog's arbitration proceeding against Orchid Child, including breach of contract, anticipatory breach of contract, breach of covenant of good faith and fair dealing and promissory estoppel.  Answering Statement and Counterclaims, Whose Dog R U Productions, Inc., f/s/o James Franco v. Orchid Child Productions LLC, Case No. 01-20-0005-1284 (American Arbitration Association, Los Angeles), Exhibit 2 to Motion, Docket No. 104 at 42-56.

name and likeness in breach of the agreement. *Id.* at 21 (internal page citation at 16).

As to the first claim for relief in Trustee's Counterclaim for declaratory relief as to

ownership of the film footage and related copyright, Whose Dog and Franco argue that

it is moot because Whose Dog no longer contests ownership and thus, there is nothing

for the court to decide. *Id.* at 19 (internal page citation at 14). As to the second claim

for relief in Trustee's Counterclaim, Whose Dog and Franco argue that deciding the

claim is premature as Trustee withdrew his motion to approve sales procedures and the

court can determine the conditions of sale, including whether the sale is subject to

Whose Dog's rights under the agreement, if and when Trustee renews that motion. *Id.*

at 20 (internal page citation at 15). As to third claim for relief in Trustee's Counterclaim

for unjust enrichment, Whose Dog and Franco argue that it is moot because it is based

on Whose Dog's ownership of the film footage, which now Whose Dog has conceded

ownership by the bankruptcy estate. *Id.*

In his opposition to the motion, Trustee argues that "[i]n their desperate effort to

avoid adjudicating, in this court, disputes that are fundamental to the administration of

this [bankruptcy] estate and well within this court's jurisdiction, Cross-defendants have

submitted a recycled version of meritless arguments that this court and the Bankruptcy

Appellate Panel have soundly rejected." Response, Docket No. 109 at 6 (internal page

citation at 1). Trustee further argues:

> Cross-defendants have cited no compelling new case law, continue to
> mischaracterize the facts regarding the subject of their disputes with the trustee
> and ignore their pending Ninth Circuit appeal of this court's arbitration decision
> for which a stay was denied. The Court should deny the Motion and consider
> imposing sanctions for, *inter alia,* Cross-defendants' violation of LBR 9013[-1](l).

*Id.* The substance of Trustee's opposition was stated as follows:

> Cross-defendants recognize that the bankruptcy court has discretion to
> deny a motion to compel arbitration, if the court finds that the subject matter of
> the arbitration involves fundamental issues of bankruptcy law and policy, Motion
> at 14:17-21. *See Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation
> Co.),* 671 F.3d 1011 (9th Cir. 2012), *Ackerman v. Eber (In re Eber),* 687 F.3d
> 1123 (9th Cir. 2012), and *Kirkland v. Rund (In re EPD Investment Company),* 821

F.3d 1146 (9th Cir. 2016).  Consistent with that principle, in opposing the Cross-defendant's motion for relief from stay to proceed to arbitration, the trustee demonstrated, and this court and the BAP both found, that the disputes between the Trustee , on[] the one hand, and the Cross-defendants, on the other, involve fundamental issues of bankruptcy law and policy, and that arbitration would lead to a multiplicity of proceedings and would require the estate to pay expenses that it had no funds to pay.

*Id.*

Whose Dog and Franco base their motion to compel arbitration and to stay proceedings on the Federal Arbitration Act (FAA).  Regarding the general requirements of the FAA, 9 U.S.C. §§ 1 *et seq.,* the United States Court of Appeals for the Ninth Circuit has stated:  "The Federal Arbitration Act (FAA) requires courts to compel arbitration of claims covered by an enforceable arbitration agreement."  *Oberstein v. Live Nation Entertainment, Inc*., 60 F.4th 505, 509-510 (9th Cir. 2023), citing 9 U.S.C. § 3. "The FAA limits the courts' role to 'determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Id., citing and quoting, Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Id., citing and quoting, Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (*citing First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). "Upon being satisfied of the existence of a valid arbitration agreement, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Id., citing*, 9 U.S.C. § 4; *see also, In re Eber,* 687 F.3d 1123, 1129 (9th Cir. 2012).

As a preliminary issue, the court determines whether the FAA applies to the written agreement between the parties, Whose Dog, Franco and Debtor Orchid Child. Section 2 of the FAA provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C.A. § 2. "The FAA applies to any contract affecting interstate commerce." *Bernsley v. Barclay Bank Delaware*, 657 F.Supp.3d 1327, 1336 (C.D. Cal. 2023) (internal quotation marks omitted), *citing and quoting, Yahoo! Inc. v. Iversen*, 836 F.Supp.2d 1007, 1009 (N.D. Cal. 2011), *also citing Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). "The 'interstate commerce' provision has been interpreted broadly, embracing any agreement that in its operation directly or indirectly affects commerce between states in any fashion." *Id*. (internal quotation marks omitted), *citing and quoting, Krause v. Barclays Bank Delaware*, No. 2:13-CV-01734-MCE-AC, 2013 WL 6145261, at *2 (E.D. Cal. Nov. 21, 2013).

It appears that the FAA is applicable to the written agreement because it evidences a transaction involving interstate commerce for the making and distribution of the Franco documentary film in interstate commerce.  "Franco, A Documentary" Agreement, Exhibit 1 to Counterclaim, Docket No. 88 at 27-36.  No party disputes that the agreement is a contract evidencing a transaction involving interstate commerce.

Regarding the legal standard for a motion to compel arbitration under the FAA, the United States District Court for the Central District of California has observed: "Congress enacted the Federal Arbitration Act ("FAA") 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Bernsley v. Barclay Bank Delaware*, 657 F.Supp.3d at 1333, *citing and quoting, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The court in *Bernsley v. Barclay Bank Delaware* further observed: "The FAA reflects a 'national policy favoring arbitration,'" *id., citing and quoting, Preston v. Ferrer*, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (citation omitted), and the principal purpose of the FAA is 'to ensur[e] that private arbitration agreements are enforced according to their terms,'" *id., citing and quoting, AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (citation

1    omitted)).

2        As the court in *Bernsley v. Barclay Bank Delaware* also observed:  "The FAA

3    provides that contractual arbitration agreements 'shall be valid, irrevocable, and

4    enforceable, save upon such grounds as exist at law or in equity for the revocation of

5    any contract.'" *Id, citing and quoting*, 9 U.S.C. § 2. "Because the FAA mandates that

6    'district courts shall direct the parties to proceed to arbitration on issues as to which an

7    arbitration agreement has been signed[,]' the FAA limits courts' involvement to

8    'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether

9    the agreement encompasses the dispute at issue.' " *Id*. (internal quotation marks

10   omitted), *citing and quoting, Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th

11   Cir. 2008) (citation omitted)) (emphasis in original). "If these two requirements are met,

12   courts generally must compel arbitration." *Id., citing, Farrow v. Fujitsu Am., Inc*., 37 F.

13   Supp. 3d 1115, 1119 (N.D. Cal. 2014). "However, arbitration clauses 'may be

14   invalidated by generally applicable contract defenses, such as fraud, duress, or

15   unconscionability.'" *Id., citing and quoting, Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S.

16   63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (citation omitted). "'While the Court may

17   not review the merits of the underlying case in deciding a motion to compel arbitration, it

18   may consider the pleadings, documents of uncontested validity, and affidavits submitted

19   by either party.'" *Id., citing and quoting, Weber v. Amazon.com, Inc.*, No. CV 17-8868-

20   GW(EX), 2018 WL 6016975, at *5 (C.D. Cal. June 4, 2018) (cleaned up and citations

21   omitted).

22        Regarding the burden of proof, the court in *Bernsley v. Barclay Bank Delaware*

23   stated:  "The party seeking to enforce an arbitration agreement bears the burden of

24   showing that the agreement exists and that its terms bind the other party." *Id.* (internal

25   quotation marks omitted), *citing and quoting, Gelow v. Cent. Pac. Mortg. Corp.*, 560

26   F.Supp.2d 972, 978 (E.D. Cal. 2008), *also citing, Sanford v. MemberWorks, Inc.*, 483

27   F.3d 956, 963 n. 9 (9th Cir. 2007) ("The district court, when considering a motion to

28   compel arbitration which is opposed on the ground that no agreement to arbitrate had

1  been made between the parties, should give to the opposing party the benefit of all

2  reasonable doubts and inferences that may arise.") (internal quotation marks omitted).

3  After the party moving to compel arbitration has met this initial burden of proof, the

4  district court in *Bernsley* stated:  "Once the moving party has met this initial burden, the

5  party opposing arbitration bears the burden of establishing that the arbitration

6  agreement does not apply." *Id. citing, Westinghouse Hanford Co. v. Hanford Atomic*

7  *Metal Trades Council,* 940 F.2d 513, 518 (9th Cir. 1991). "[A]ny doubts concerning the

8  scope of arbitrable issues should be resolved in favor of arbitration, whether the

9  problem at hand is the construction of the contract language itself or an allegation of

10  waiver, delay, or a like defense to arbitrability." *Id., citing and quoting, Moses H. Cone*

11  *Mem'l Hosp*., 460 U.S. at 24-25, 103 S.Ct. at 941.

12       Whose Dog and Franco as the parties seeking to enforce an arbitration

13  agreement have met their initial burden of showing that an arbitration agreement exists

14  and its terms bind the other party, Trustee, as Debtor's successor in interest.  *Bernsley*

15  *v. Barclay Bank Delaware*, 657 F.Supp.3d at 1333 (citations omitted).  That is, a valid

16  agreement to arbitrate exists in the "Franco, A Documentary" agreement, and the

17  agreement encompasses the disputes at issue, i.e., the contractual and quasi-

18  contractual claims asserted by Trustee in his Counterclaim fall within the terms of the

19  arbitration clause of the agreement, stating: "Any action, controversy, claim, dispute,

20  suit or proceeding arising out of or related to the subject matter of, or transactions

21  contemplated by, this Agreement ('Action') is subject to binding arbitration in English in

22  Los Angeles, California, pursuant to the Commercial Arbitration Rules of the American

23  Arbitration Association ('AAA') as said rules may be amended from time to time with full

24  rights of discovery as permitted in accordance with California law.")

25       Accordingly, Trustee as the party opposing arbitration must show that the

26  arbitration agreement does not apply or otherwise should not be compelled.  *Bernsley v.*

27  *Barclay Bank Delaware*, 657 F.Supp.3d at 1333 (citations omitted).  As indicated at the

28  hearing, Trustee does not dispute per se that there is a valid agreement to arbitrate in

the "Franco, A Documentary" agreement or that the agreement encompasses the

disputes at issue.  However, Trustee's defense is that his claims in the Counterclaim are

excepted from arbitration based on the rulings of the court and the Bankruptcy Appellate

Panel on Whose Dog's motion for relief from the automatic stay that the arbitration of

the claims would conflict with the underlying purposes of the Bankruptcy Code.

The proceedings that Trustee refers to during the pendency of Whose Dog's stay

relief motion filed on October 1, 2021 (Main Bankruptcy Case Docket No. 62) relate to

the arbitration proceedings brought by Whose Dog in which Debtor Orchid Child and

Franco were also parties.  Response, Docket No. 109 at 15 (internal page citation at

10); Whose Dog's Demand for Arbitration, Orchid Child's Answering Statement and

Counterclaims, Franco's Answer to Counterclaims and Counterclaim, Whose Dog's

Answer to Counterclaim, Exhibits 1-4 to Motion, Docket No. 104.  In Whose Dog's

Demand for Arbitration, it requested declaratory relief that it did not breach the

agreement, that Orchid Child breached the agreement and does not have the right to

advertise, distribute, sell and/or otherwise exploit the motion picture tentatively titled

"Franco, a Documentary," and that Orchid Child breached the agreement and does not

have the right to use Franco's name and likeness in correction with raising financing

and/or in connection with advertising or promotion of the motion picture prior to

receiving his approval as set forth in the agreement.  Exhibit 1 to Motion, Docket No.

104.  In Orchid Child's Answering Statement and Counterclaims, it requested monetary

damages of no less than $850,000 on its counterclaims for breach of contract,

anticipatory breach of contract, promissory estoppel and/or breach of the covenant of

good faith and fair dealing.  Exhibit 2 to Motion, Docket No. 104.  In Franco's Answer

and Counterclaim, he requested declaratory relief that he is not in breach of the

agreement, that Orchid Child did not comply with the agreement in failing to obtain his

approvals as required therein and accordingly, does not have the right to advertise,

distribute, sell and/or otherwise exploit the motion picture, that Orchid Child does not

have the right to use his name and likeness in connection with raising financing and/or

1   in connection with advertising or promotion of the motion picture prior to his approvals

2   as set forth in the agreement.  Exhibit 3 to Motion, Docket No. 104.  In Whose Dog's

3   Answer to Counterclaim, it requested that Orchid Child take nothing by its counterclaim.

4   Exhibit 4 to Motion, Docket No. 104.  The court also notes that pending at the time of

5   Whose Dog's stay relief motion were: (1) Trustee's motion for approval of sales

6   procedures regarding a sale of the film footage, which was filed on August 24, 2021

7   (Main Bankruptcy Case Docket No. 42); (2) this adversary proceeding initiated on

8   October 12, 2021 by Whose Dog's complaint for declaratory and injunctive relief that it

9   and/or Franco owned the rights to the unfinished film footage and that Trustee may not

10  market, sell, use or otherwise exploit such property (Complaint, Docket No. 1); and (3)

11  the proofs of claim filed in the bankruptcy case by Whose Dog and Franco on

12  November 22, 2021 as shown on the Claims Register.

13          Whose Dog's stay relief motion was denied by order filed and entered on

14  January 3, 2023 (Main Bankruptcy Case Docket No. 137), and its appeal of the stay

15  relief denial order was resolved by the Bankruptcy Appellate Panel (BAP) in its

16  memorandum decision and judgment filed and entered on September 7, 2023.

17  Trustee's sales procedures motion was temporarily resolved by stipulation and order

18  filed and entered on January 23, 2023 when the parties agreed that Trustee would not

19  take action to market or sell the film footage until he gave 45 days notice by email to

20  Whose Dog's counsel (Docket Nos. 44 and 45).  The issues raised by the "claims" in

21  Trustee's sales procedures motion were whether the estate had ownership of the film

22  footage and the authority to sell it, which issues are also raised in Trustee's first and

23  second claims for relief for declaratory relief in the Counterclaim.  Whose Dog's

24  complaint in this adversary proceeding was dismissed with prejudice on its motion on

25  January 22, 2024 (Docket No. 96).

26          Trustee argues that his filing of the Counterclaim should not give Whose Dog and

27  Franco "a second bite at the arbitration apple," meaning that the court and the BAP in

28  not allowing stay relief determined that arbitration raised core bankruptcy issues within

the court's jurisdiction and stay relief would result in substantial interference with the

bankruptcy case and hinder judicial economy, and as held by the BAP, the court did not

abuse its discretion in denying stay relief which did not run afoul of the federal policy

favoring arbitration.  Memorandum, *In re Orchid Child Productions, LLC*, BAP No. CC-

23-1011-FLS, 2023 WL 5770321, slip op. at *9 (9th Cir. BAP Sept. 7, 2023).  The current

motion to compel arbitration is different in that the relief sought is not the same as the

prior stay relief motion, though both motions raise similar legal issues and policy

concerns.  The stay relief motion just sought to allow the arbitration to proceed, but the

motion to compel arbitration seeks to compel the trustee to submit to arbitration.  While

Trustee may consider this distinction to be the same difference, the court sees that the

motions are different and not an impermissible "second bite".  Before Trustee filed the

Counterclaim, Whose Dog and Franco were not required to litigate Trustee's claims in

this court, but the filing of the Counterclaim has now forced the issue, prompting their

filing of the motion to compel arbitration to assert their arbitration rights under the

agreement. [4]

    In *In re Thorpe Insulation Co.,* 671 F.3d 1011 (9th Cir. 2012), the Ninth Circuit

addressed the question whether a bankruptcy court has the discretion to decline to

enforce an otherwise applicable arbitration provision.  *Id.* at 1020-1021.  The court held

that it did.  *Id.*  In that case, the court held that the bankruptcy court properly exercised

its discretion to decline to compel arbitration of a core proceeding of the allowance or

---

[4]  In Trustee's post-hearing brief, Docket No. 114 at 8 n. 2 (internal page citation at 5 n. 2), he argues: "In
its tentative ruling, the Court found that "the trustee's contractual and quasicontractual claims (3rd through
7th counterclaims) were not before the court and the BAP on the stay relief motion." This position is
tenuous. The BAP Opinion makes clear that the arbitration claims, which included identical claims against
Whose Dog and Franco for breach of contract, anticipatory breach, promissory estoppel, and breach of
the implied covenant as the counterclaims asserted by the Trustee in this proceeding, were in fact
considered."  The court notes that there is no page citation to the BAP Opinion as it appears to the court
that the BAP like this court was concerned with Whose Dog's claims in arbitration as opposed to the
Debtor's arbitration claims.  BAP Opinion, slip op. at *12-16.  The court's primary concern was that Whose
Dog's arbitration claims interfered with Trustee's ability to administer the estate and liquidate estate
assets, but probably Trustee makes a valid point that the claims in arbitration pending at the time of the
stay relief motion proceedings included Debtor's and now the estate's arbitration claims for contractual
and quasi-contractual relief in Debtor's Answering Statement and Counterclaims filed in the arbitration
proceeding.

1  disallowance of a proof of claim filed by a creditor.  *Id.* at 1020-1024.

2  In so holding, the Ninth Circuit in *Thorpe Insulation Co.* recognized the liberal

3  federal policy favoring arbitration:

4
5  The Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Act provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that a court must stay a proceeding if it is satisfied that an issue in the proceeding is arbitrable under such an agreement. 9 U.S.C. §§ 2–3. A court's duty to "rigorously enforce" arbitration agreements does not diminish "when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (internal quotation marks omitted).

11  673 F.3d at 1020.  However, based on the Supreme Court's analysis in

12  *Shearson/American Express, Inc. v. McMahon,* the Ninth Circuit acknowledged in

13  *Thorpe Insulation Co.* that there is an issue of a possible legislative override of the

14  mandate of the FAA favoring arbitration in bankruptcy proceedings:

15
16  "Like any statutory directive," however, "the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id. [McMahon,* 482 U.S.] at 227, 107 S.Ct. 2332. "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." Id. (alteration, citation, and internal quotation marks omitted).

20  We must decide whether Congress "intended to make an exception to the Arbitration Act" for claims arising in bankruptcy proceedings, "an intention discernible from the text, history, or purposes of the [Bankruptcy Code]." *See id.* Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting. *See Whiting–Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.),* 479 F.3d 791, 796 (11th Cir.2007); *[Mintze v. Am. Gen. Fin. Servs., Inc. (]In re Mintze[)],* 434 F.3d [222,] at 231 [3d Cir. 2006)]; *Mor–Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co. (In re Mor–Ben Ins. Mkts. Corp.),* 73 B.R. 644, 648 (B.A.P. 9th Cir.1987). We ask, then, whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. *See McMahon*, 482 U.S. at 227, 107 S.Ct. 2332.

28  671 F.3d at 1020.

In addressing this issue of first impression in the Ninth Circuit, the court in *Thorpe Insulation Co.* "considered, as a threshold matter, a distinction between core and non-core proceedings.  *Id.*  Regarding core proceedings, pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy court "may hear and determine all cases under title 11 [the Bankruptcy Code, 11 U.S.C.] and all core proceedings arising under title 11, or arising in a case under title 11" that are referred to it by the district court [5], which means that a bankruptcy court may enter a final judgment if the dispute is a "core proceeding," which "arises under" the Bankruptcy Code or "arises in" a bankruptcy case.  Memorandum, *In re Orchid Child Productions, LLC*, BAP No. CC-23-1011-FLS, 2023 WL 5770321, slip op. at *11 (9th Cir. BAP Sept. 7, 2023); *see also, In re Harris Pine Mills,* 44 F.3d 1431, 1434-1435 (9th Cir. 1995).  As the Bankruptcy Appellate Panel of the Ninth Circuit has stated:

> A proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11.  In contrast, claims for relief "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case.

*Certain Underwriters at Lloyds v. GACN, Inc. (In re GACN, Inc.)*, 555 B.R. 684, 693 (9th Cir. BAP 2016)(citation omitted).

In contrast, "[p]roceedings in which the bankruptcy court cannot enter a final judgment (i.e., proceedings that are not 'core proceedings,' but are still within the bankruptcy jurisdiction because they are 'related to' the bankruptcy case) are called 'non-core' proceedings."  Memorandum, *In re Orchid Child Productions, LLC*, BAP No. CC-23-1011-FLS, 2023 WL 5770321 (9th Cir. BAP Sept. 7, 2023), slip op. at *12. "Proceedings are 'related to' a bankruptcy if 'they do not depend on the Bankruptcy Code for their existence and they could proceed in another court.'"  *Id., citing and quoting, Dunmore v. United States,* 358 F.3d 1107, 1114 (9th Cir. 2004).  "In a non-core

---

[5]  Pursuant to 28 U.S.C. § 157(a), the United States District Court for the Central District of California has referred cases and proceedings that are within the grant of bankruptcy jurisdiction under 28 U.S.C. § 1334.  General Order 13-05 of the United States District Court for the Central District of California (July 1, 2013), cited in, Memorandum, Bankruptcy Appellate Panel, *In re Orchid Child Productions, LLC*, BAP No. CC-23-1011-FLS (9th Cir. BAP Sept. 7, 2023), slip op. at *10-11.

proceeding, the bankruptcy court can enter a final judgment only if all parties consent;

otherwise, the bankruptcy court must enter proposed findings and a recommended

judgment for the district court's de novo review."  *Id., citing,* 28 U.S.C. § 157(c).

Regarding enforcement of arbitration in non-core proceedings under the FAA, the

Ninth Circuit in *Thorpe Insulation Co.* observed:  "In non-core proceedings, the

bankruptcy court generally does not have discretion to deny enforcement of a valid

prepetition arbitration agreement."   671 F.3d at 1021 (citations omitted).  As to

enforcement of arbitration in core proceedings under the FAA, the Ninth Circuit

observed: "In core proceedings, by contrast, the bankruptcy court, at least when it sees

a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration

agreement."  *Id.*

In considering the difference between core and non-core proceedings in *Thorpe*

*Insulation Co.*, the Ninth Circuit has recognized:

> The rationale for the core/non-core distinction, as explained by the Second
> Circuit, is that non-core proceedings "are unlikely to present a conflict sufficient to
> override by implication the presumption in favor of arbitration," whereas core
> proceedings "implicate more pressing bankruptcy concerns."

671 F.3d at 1021, *citing and quoting, [U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. &*

*Indem. Ass'n (]In re U.S. Lines[)]*, 197 F.3d [631,] at 640 [(2d Cir. 1999)].  But even so,

the Ninth Circuit went on to recognize that "'not all core bankruptcy proceedings are

premised on provisions of the Code that inherently conflict with the Federal Arbitration

Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of

the Bankruptcy Code.'"  *Id., citing and quoting, [Settlement Trust & Asbestos Claims*

*Mgmt. Corp. (] In re Nat'l Gypsum [Co.)]*, 118 F.3d [1056,] at 1067 [(5th Cir. 1997)].

Regarding the legal standard that it was adopting on the issue of whether a

bankruptcy court has discretion to decline to enforce an arbitration agreement in

bankruptcy proceedings, the Ninth Circuit stated in *Thorpe Insulation Co.*:

> We agree that the core/non-core distinction, though relevant, is not alone
> dispositive. We join our sister circuits in holding that, even in a core proceeding,
> the *McMahon* standard must be met—that is, a bankruptcy court has discretion

to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code. *See McMahon*, 482 U.S. at 227, 107 S.Ct. 2332; *In re Elec. Mach. Enters.*, 479 F.3d at 796 (Eleventh Circuit); *In re Mintze*, 434 F.3d at 231 (Third Circuit); *[Phillips v. Congelton, L.L.C., (]In re White Mountain Mining [)]*, 403 F.3d [164,] at 169-70 [(4th Cir. 2005)] (Fourth Circuit); *In re U.S. Lines*, 197 F.3d at 640 (Second Circuit); *In re Nat'l Gypsum*, 118 F.3d at 1069-70 (Fifth Circuit).

*Id.*

In resolving the appeal in *Thorpe Insulation Co.,* the Ninth Circuit first addressed whether the resolution of the dispute was a core proceeding and determined that the dispute over the allowance or disallowance of the proof of claim of a creditor was a core proceeding.  671 F.3d at 1021-1022.  Holding that the resolution of the creditor's proof of claim in the bankruptcy case was a core matter, the Ninth Circuit in *Thorpe Insulation Co.* then addressed whether the bankruptcy court had discretion to deny the creditor's motion to compel arbitration.  *Id.* at 1022.  The Ninth Circuit upheld the bankruptcy court's exercise of discretion to decline to compel arbitration because the creditor's claim was "inextricably intertwined" with the debtor's bankruptcy case as the claim was based on debtor's allegedly breaches of a prepetition settlement agreement in administering the bankruptcy estate by formulating a reorganization plan based on consolidation of debtor's asbestos-related assets into a single trust for the benefit of asbestos claimants pursuant to Section 524(g) of the Bankruptcy Code, 11 U.S.C.  and that the nature of the allegations were such that adjudication of the creditor's claim in another forum would conflict with fundamental bankruptcy policy.  *Id.*  According to the Ninth Circuit, because Congress intended that a bankruptcy court oversee all aspects of a reorganization plan under 11 U.S.C. § 524(g), only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy case gives rise to a breach of contract claim, and arbitration would conflict with that congressional intent.  *Id.*

The Ninth Circuit alternatively held in *Thorpe Insulation Co.* that the purposes of the Bankruptcy Code include "[c]entralization of disputes concerning a debtor's legal obligations" and "protect[ing] creditors and reorganizing debtors from piecemeal litigation" and that the bankruptcy court's exercise of discretion to decline to enforce

arbitration was proper because arbitration conflicted with these purposes and policies of the Bankruptcy Code as a whole. *Id.* at 1022-1023.  In so holding, the Ninth Circuit observed:  "Arbitration of a creditor's claim against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization.. . . In such a case the bankruptcy court would lose control over the timing of the reorganization because it would not have control over the timing of the arbitrations.  The general need in any bankruptcy proceeding is heightened in a § 524(g) proceeding involving multiple insurers and numerous asbestos claimants. . . ."  *Id.* at 1023.

Following its decision in *Thorpe Insulation Co.*, the Ninth Circuit in *In re Eber*, 687 F.3d 1123 (9th Cir. 2012) upheld the bankruptcy court's discretion to decline to compel arbitration of creditors' claims for breach of contract, fraud and breach of fiduciary duty arising out of a prepetition written agreement with the debtor. *Id.* at 1125-1126.  In *Eber*, creditors commenced an arbitration proceeding against the debtor pursuant to their written agreement, which proceeding sought damages for breach of contract, fraud and breach of fiduciary duty in connection with construction and operation of the debtor's hair salon business, and later, the debtor filed a Chapter 7 bankruptcy case, which stayed the arbitration. *Id.*  Creditors commenced an adversary proceeding for damages and for determination that debts for damages owed by the debtor to them were non-dischargeable, and they filed a motion for relief from the automatic stay to allow them to proceed with arbitration of their claims. *Id.*  The bankruptcy court denied creditors' stay relief motion. *Id.*  Creditors then filed simultaneous motions to vacate the bankruptcy court's decision denying stay relief and to compel arbitration, which motions the bankruptcy court denied. *Id.* at 1126.  Creditors appealed the bankruptcy court's denial of their motions to the district court, which affirmed. *Id.*  Creditors then appealed to the Ninth Circuit, which also affirmed. *Id.*

In affirming the district court's decision affirming the bankruptcy court's denial of creditors' motion to compel arbitration, the Ninth Circuit in *Eber* applied the so-called

1  *McMahon* framework that it had adopted as circuit precedent in *Thorpe Insulation Co.*

2  *Id.* at 1128-1132, *citing, In re Thorpe Insulation Co.,* 671 F.2d at 1020-1021.  As it did in

3  *Thorpe Insulation Co.,* the Ninth Circuit in *Eber* first considered whether the dispute

4  involved core proceedings, observing that "the bankruptcy court here determined that

5  although Ackerman and Kuriloff [creditors] were attempting to designate their underlying

6  state law breach of contract, fraud, and breach of fiduciary claims as non-core arbitrable

7  claims, in actuality, they were seeking to arbitrate dischargeability under [11 U.S.C.] §.

8  523(a)(2), (4) and (6), a core bankruptcy issue.  *See* 28 U.S.C. § 157(b)(2)(I) ('Core

9  proceedings include, . . . determinations as to the dischargeability of particular debts.')."

10  *Id.* at 1130.  The Ninth Circuit held that the district court did not err when it affirmed the

11  bankruptcy court in denying the creditors' motion to compel arbitration as to the

12  determination that the dispute was a core matter.  *Id.*

13       After considering whether the dispute between the parties was a core

14  proceeding, the Ninth Circuit in *Eber* next considered whether arbitrating the core

15  proceeding would conflict with the underlying purposes of the Bankruptcy Code.  *Id.* at

16  1130-1131, *citing, In re Thorpe Insulation Co.,* 671 F.3d at 1021.  In making this

17  consideration, the Ninth Circuit further observed in *Eber* that "[c]ourts must consider the

18  Bankruptcy Code's objectives, including centralization of disputes concerning a debtor's

19  legal obligations, and protection of debtors and creditors from piecemeal litigation."  *Id.*

20  at 1131, *citing, In re Thorpe Insulation Co.,* 671 F.3d at 1022-1023.

21       Regarding appellate review of the bankruptcy court's exercise of discretion

22  whether to decline to compel arbitration in a bankruptcy proceeding, the Ninth Circuit in

23  *Eber* stated: "When a bankruptcy court considers conflicting policies as the bankruptcy

24  court did here, we acknowledge its exercise of discretion and defer to its determinations

25  that arbitration will jeopardize a core bankruptcy proceeding."  *Id.* at 1131, *citing, MBNA*

26  *Am. Bank [v. Hill],* 436 F.3d [104,] at 107 [(2d Cir. 2006)].

27       In considering whether arbitration would conflict with the purposes of the

28  Bankruptcy Code, including centralization of disputes concerning a debtor's legal

obligations and protection of creditors from piecemeal litigation, in the particular facts in

the *Eber* case, the Ninth Circuit held that arbitration would conflict with the purposes of

the Bankruptcy Code, stating: "We agree with the district court's conclusion that implicit

in the bankruptcy court's reasoning is the conclusion that allowing an arbitrator to

decide issues that are so closely intertwined with dischargeability would 'conflict with the

underlying purposes of the Bankruptcy Code.'" *Id.* at 1130-1131, *citing, In re Thorpe

Insulation Co.,* 671 F.3d at 1021. The Ninth Circuit noted that the lower courts had

rejected creditors' argument that the dispute between the parties regarding their breach

of contract, fraud, breach of fiduciary duty and dischargeability claims should be treated

as "three separate and distinct claims": (1) liability, (2) damages and (3) if liability is

found, dischargeability," with liability and damages as non-core proceedings and

dischargeability as a core proceeding. *Id.* at 1126-1127. The Ninth Circuit also noted

that bankruptcy courts have exclusive jurisdiction to determine claims of dischargeability

of debts based on fraud, breach of fiduciary duty and willful and malicious injury under

11 U.S.C. §§ 523(a)(2), (4) and (6), and "dischargeability [is] a core matter which

bankruptcy courts have special expertise to decide." *Id.* at 1128, 1131. The Ninth

Circuit further noted that the bankruptcy court's decision to deny the creditors' motion to

compel arbitration was based on its view that it could be barred from deciding issues

related to dischargeability as a result of collateral estoppel if an arbitrator made certain

findings, and thus allowing the arbitrator to decide issues so closely intertwined with

dischargeability would conflict with the purposes of the Bankruptcy Code so as to

jeopardize a core bankruptcy proceeding. *Id.* at 1127, 1130-1131.

In a subsequent decision in *In re EPD Investment Co., LLC,* 821 F.3d 1146 (9th

Cir. 2016), the Ninth Circuit applied the principles it applied in *In re Thorpe Insulation

Co.,* and upheld the bankruptcy court's exercise of discretion to decline to compel

arbitration in a bankruptcy proceeding. Citing *Thorpe Insulation Co.,* the Ninth Circuit

reaffirmed that a bankruptcy court has discretion to decline to enforce an arbitration

agreement:

"[I]n a core [bankruptcy] proceeding.... a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *In re Thorpe Insulation Co.,* 671 F.3d at 1021. We review de novo whether a bankruptcy court, as a matter of law, has discretion to deny a motion to compel arbitration. *Id.* at 1019-20. If we conclude that the bankruptcy court had discretion, we then review the exercise of discretion only for abuse of discretion. Id. at 1020. "When a bankruptcy court considers conflicting policies ..., we acknowledge its exercise of discretion and defer to its determinations that arbitration will jeopardize a core bankruptcy proceeding." *Ackerman v. Eber (In re Eber),* 687 F.3d 1123, 1131 (9th Cir.2012).

821 F.3d at 1150 (footnote omitted).

In reviewing the bankruptcy court's exercise of discretion not to enforce an arbitration agreement, the Ninth Circuit in *EPD Investment Co., LLC* held that the bankruptcy court did not abuse its discretion in denying the creditors' motion to compel arbitration, stating:

On de novo review, we agree with the bankruptcy court that the Trustee's fraudulent conveyance, subordination, and disallowance causes of action were core proceedings, thereby giving the bankruptcy court discretion to weigh the competing bankruptcy and arbitration interests at stake. See 28 U.S.C. § 157(b)(2)(B), (H); *see also In re Thorpe Insulation Co.,* 671 F.3d at 1021. The bankruptcy court properly applied *Thorpe Insulation* to determine that the arbitration provisions at issue conflicted with Bankruptcy Code purposes of having bankruptcy law issues decided by bankruptcy courts; of centralizing resolution of bankruptcy disputes; and of protecting parties from piecemeal litigation. *See In re Thorpe Insulation Co.,* 671 F.3d at 1022-23.

The bankruptcy court's *Thorpe Insulation* analysis was supported by the record extant at the time the bankruptcy court ruled because the bankruptcy court had supervised the debtors' cases for nearly three years, during which the Trustee filed more than 100 other adversary proceedings with the bankruptcy court.

821 F.3d at 1150-1151.

In their motion, Whose Dog and Franco request this court compel Trustee to submit to arbitration of his (Trustee's) "viable" claims in the Counterclaim, that is, Trustee's third through ninth claims for relief, and stay this adversary proceeding pending a determination in arbitration.  Motion, Docket No. 104 at 2, 22. [6] In determining

---

[6]   Whose Dog and Franco in the conclusion of the motion only request the court to compel arbitration of

this motion to compel arbitration in a bankruptcy proceeding, the court will apply the

principles for resolving such a motion as enunciated by the Ninth Circuit in *In re Thorpe*

*Insulation Co., In re Eber* and *In re EPD Investment Co., LLC.*

Consistent with the analysis in *Thorpe Insulation Co.,* the court first addresses

whether the resolution of the disputes sought to be arbitrated, Trustee's third through

ninth claims for relief, are core proceedings.  *In re Thorpe Insulation Co.,* 671 F.3d at

1021-1022.  The

As noted previously, the claims for relief in Trustee's Counterclaim (Docket No.

88) are as follows: (1) first claim for relief for declaratory relief regarding ownership of

film footage of an unfinished film for the "Franco, A Documentary" motion picture [7] and

the related copyright; (2) second claim for relief for declaratory relief that Trustee may

sell the film footage and related copyright free and clear of the interests of Whose Dog

and Franco; (3) third claim for relief against Whose Dog and Franco for unjust

enrichment; (4) fourth claim for relief against Whose Dog and Franco for breach of

contract; (5) fifth claim for relief against Whose Dog and Franco for anticipatory breach

of contract; (5) sixth claim for relief against Whose Dog and Franco for promissory

estoppel; (7) seventh claim for relief against Whose Dog and Franco for breach of the

covenant of good faith and fair dealing; (8) objection to the proof of claim of Whose Dog;

and (9) objection to the proof of claim of Franco.  Counterclaim, Docket No. 88.

Whose Dog and Franco argue that Trustee's third through ninth claims for relief,

which they seek to compel arbitration, are non-core proceedings.  Motion, Docket No.

104 at 17-21 (internal page citation at 12-16).  Regarding Trustee's third through

seventh claims for relief based on contract and quasi-contract, Whose Dog and Franco

---

Trustee's third through ninth claims for relief in the Counterclaim.  Conclusion, Motion, Docket No. 104 at
22.  Whose Dog and Franco apparently do not ask to compel arbitration of Trustee's first and second
claims for relief on grounds that the first claim for relief is moot and the second claim for relief is
premature.  Motion, Docket No. 104 at 15, 19-20 (internal page citation at 10, 14-15).

[7] The parties do not dispute that the existence of unfinished film footage from the unfinished film, "Franco,
A Documentary."  Complaint, Docket No. 1, filed on October 12, 2021, ¶ 7; Answer thereto, Docket No.
16, filed on November 11, 2021.

argue that these claims are non-core proceedings because "[t]hey were raised in the pre-Petition Arbitration; arise exclusively under the Agreement; there is no bankruptcy policy implicated since the claims are completely independent of the bankruptcy and do not arise under any bankruptcy statute or rule." *Id.* at 20-21 (internal page citation at 15-16).  Regarding Trustee's eighth and ninth claims for relief objecting to the proofs of claim of Whose Dog and Franco, they argue that "[t]hese claims are based on Whose Dog's and Franco's alleged breach of the Agreement; and Franco's claim that Debtor wrongfully used his name and likeness in breach of the Agreement," that "[t]hese are non-core claims most appropriately dealt with in an Arbitration," but that "[w]hile the Trustee may argue that objections to claims are 'core,' this bootstrap argument fails since the claims themselves fall squarely under the arbitration clause."  Motion, Docket No. 104 at 21 (internal page citation at 16).

In his response to the motion, Trustee argues that his claims for relief in the Counterclaim are core proceedings, asserting:

> Specifically, the Trustee's counterclaims include the following claims that are expressly defined as "core" under Sec. 157(b)(2):
>
> (A) matters concerning the administration of the estate (Claims 1 and 2);
> (B) allowance or disallowance of claims against the estate (Claims 8 and 9);
> (C) counterclaims by the estate against persons filing claims against the estate (claims 1-8); and
> (D) other proceedings affecting the liquidation of assets of the estate (claims 1-6).

Response, Docket No. 109 at 8 (internal page citation at 3).

The court agrees with Trustee that his claims for relief in the Counterclaim are core proceedings.  All of Trustee's nine claims for relief in the Counterclaim meet the express statutory definition of core proceedings under 28 U.S.C. § 157(b)(2)(C) as "counterclaims by the estate against persons filing claims against the estate."  As previously noted, Whose Dog and Franco filed proofs of claim in this bankruptcy case against the estate on November 22, 2021, which defines them as "persons filing claims

against the estate," and all of Trustee's claims are counterclaims by the estate against them.

Trustee's eighth and ninth claims for relief in the Counterclaim meet the express statutory definition of core proceedings under 28 U.S.C. § 157(b)(2)(B) as matters of "allowance or disallowance of claims against the estate."  As previously noted, Whose Dog and Franco filed proofs of claim in this bankruptcy case against the estate on November 22, 2021, which fall within the definition of "claims against the estate." Whose Dog's and Franco's proofs of claim and Trustee's claims objecting to these proofs of claim are core matters under 11 U.S.C. § 157(b)(2)(B) as matters of allowance or disallowance of claims against the estate), and Trustee's claims are also core matters under 28 U.S.C. § 157(b)(2)(C) as "counterclaims by the estate against persons filing claims against the estate."

Trustee's first and second claims for relief in the Counterclaim meet the express statutory definition of core proceedings under 28 U.S.C. § 157(b)(2)(A) and (N) as "matters concerning administration of the estate" and seeking "orders approving the sale of property."  Trustee in these claims seeks declaratory relief that the unfinished film footage and related copyright are property of the bankruptcy estate under 11 U.S.C. § 541 subject to his administration under 11 U.S.C. § 704, which he may sell under his authority under 11 U.S.C. §§ 363 and 704.

Trustee's first through sixth claims for relief in the Counterclaim meet the express statutory definition of core proceedings under 28 U.S.C. § 157(b)(2)(O) as "other proceedings affecting the liquidation of the assets of the estate."  Trustee in these claims seeks judicial relief to liquidate what he alleges are assets of the bankruptcy estate, namely, §the unfinished film footage and related copyright, and the debtor's contractual and quasi-contractual claims against Whose Dog and Franco.

While the arguments of Whose Dog and Franco that Trustee's claims are non-core as prepetition claims of Debtor based on nonbankruptcy state law are not without

some force, they are ultimately unpersuasive.  Citing Ninth Circuit case law defining

core and non-core matters, Whose Dog and Franco argue that Trustee's claims do not

meet the case law definition of core proceedings:

> Core matters are defined by 28 U.S.C. § 157(b) as "proceedings arising under title 11, or arising in a case under title 11." *In re Harris Pine Mills*, 44 F.3d 1431, 1436 (9th Cir. 1995).; *see also In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000) ("In general, a core proceeding in bankruptcy is one that invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). By contrast, "[n]on-core proceedings are those not integral to the restructuring of debtor creditor relations and not involving a cause of action arising under title 11." *Harris Pine Mills*, 44 F.3d at 1436.

> Here, Claims 3 through 7 undeniably arise from the Agreement, as they seek relief for unjust enrichment (the Trustee has agreed to dismiss with prejudice), breach of contract, anticipatory breach of contract, promissory estoppel and breach of the covenant of good faith and fair dealing (the "Non-Core Claims"). See Counterclaim at Docket No. 88. The Trustee appears to concede that these are noncore, but nevertheless insists that this Court nevertheless has discretion to deny Arbitration.

Supplemental Brief of Whose Dog and Franco, Docket No. 113 at 3-4 (internal page

citation at 1-2).

Whose Dog's and Franco's arguments are colorable that Trustee's third through

seventh claims are based on nonbankruptcy state law for breach of contract,

anticipatory breach of contract, promissory estoppel and breach of the covenant of good

faith and fair dealing, and based on the above case law definitions of core and non-core

proceedings, are not core proceedings because they are not ones invoking substantive

rights provided by the Bankruptcy Code, 11 U.S.C., or are not causes of action arising

under the Bankruptcy Code.  However, the arguments fail because the case law

definitions of core and non-core proceedings while informative are not exclusive

because the statutory definitions of core proceedings in 28 U.S.C. §,157(b)(2) while not

exclusive are authoritative, and Trustee's claims for relief meet the statutory definitions

of core proceedings, especially in light of Whose Dog's and Franco's filing of claims

against the estate in this bankruptcy case, which makes all of Trustee's claims fall within

the statutory definition of a core proceeding under 11 U.S.C. § 157(b)(2)(C) as

counterclaims against persons filing claims against the estate.  Moreover, Trustee's

eighth and ninth claims for relief objecting to the claims of Whose Dog and Franco also

clearly come within the statutory definition of a core proceeding for disallowance of

claims under 11 U.S.C. § 157(b)(2)(B).  Equally as well, Trustee's first and second

claims for relief seeking declaratory relief to determine ownership of certain assets as

property of the bankruptcy estate and to sell such property also clearly come within the

statutory definition of a core proceeding for matters affecting the administration of the

bankruptcy estate under 11 U.S.C. § 157(b)(2)(A).

Having determined that the disputes between the parties from Trustee's claims

for relief are core proceedings, consistent with *Thorpe Insulation Co.,* the court now

considers whether arbitrating the core proceedings would conflict with the underlying

purposes of the Bankruptcy Code.  *Id.* at 1130-1131, *citing, In re Thorpe Insulation Co.,*

671 F.3d at 1021; *accord, In re Eber,* 687 F.3d at 1130-1131.  In making this

consideration, as the Ninth Circuit observed in *Eber,* "[c]ourts must consider the

Bankruptcy Code's objectives, including centralization of disputes concerning a debtor's

legal obligations, and protection of debtors and creditors from piecemeal litigation."  *In

re Eber,* 687 F.3d at 1131, *citing, In re Thorpe Insulation Co.,* 671 F.3d at 1022-1023.

Trustee as the party opposing the motion to compel arbitration has the burden of

showing why arbitration should not be compelled as Whose Dog and Franco have met

their initial burden of showing that a valid arbitration agreement exists and covers the

disputes at issue.

Trustee argues that arbitration should not be compelled here because the

disputes involve core proceedings and arbitration of the issues presented by the

disputes would inherently conflict with the purposes of the Bankruptcy Code:

> The inherent conflict between arbitration and the purposes of the
> Bankruptcy Code is readily apparent here. Compelling arbitration of even some
> of the Trustee's counterclaims would undermine every one of these fundamental
> policies and jeopardize the entire bankruptcy process.

First, the estate does not have the financial means to participate in arbitration. Congress's concern that the extra expense of having to litigate bankruptcy-related claims outside the bankruptcy court would give parties liable to the estate unfair bargaining leverage against the Trustee is thus entirely justified.

Second, compelling arbitration—even if only on the breach of contract claims—would allow an arbitrator to make rulings (on default) that will determine whether and under what conditions the Trustee can administer and liquidate assets of the estate, without any notice to or participation of the other creditors or this court.

Third, since all the issues and claims presented in this proceeding are inextricably intertwined and require a resolution of the same disputed facts, separating the claims and allowing litigation to proceed simultaneously in two forums will create chaos, piecemeal litigation, a duplication of costs, and a substantial risk of conflicting outcomes. Ultimately, the bankruptcy court could be barred from deciding core bankruptcy issues due to collateral estoppel from certain findings made by the arbitrator.

Supplemental Brief of Trustee, Docket No. 114 at 10 (internal page citation at 7).

This bankruptcy case was filed under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 et seq.  Chapter 7 is described by a leading bankruptcy treatise, *Collier on Bankruptcy,* as follows:

Chapter 7, colloquially known as "straight bankruptcy," is the "operative" chapter of the Bankruptcy Code that normally governs liquidation of a debtor. Liquidation is a form of relief afforded by the bankruptcy laws that involves the collection, liquidation and distribution of the nonexempt property of the debtor and culminates, if the debtor is an individual, in the discharge of the liquidation debtor. (A plan under chapter 11, 12 or 13 also may liquidate some or all of the debtor's property.)

Levin and Sommer, *Collier on Bankruptcy*, ¶ 700.01 (16th edition online 2024 update) (footnotes omitted).  Regarding the purposes of Chapter 7, the Ninth Circuit in *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2005) observed: "It is generally agreed that chapter 7 of the Bankruptcy Code, which governs liquidations, embodies two ideals: (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors."  *Id.*, 394 F.3d at 1203 (9th Cir. 2005), *citing Stellwagen v. Clum*,

245 U.S. 605, 617 (1918).

Regarding the purpose of Chapter 7 for equitable distribution of assets to creditors, the Ninth Circuit in *Sherwood Partners, Inc. v. Lycos, Inc.* described how the nature and operation of the federal bankruptcy system in Chapter 7 bankruptcy cases:

> . . . Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors. In a world of individual actions, each creditor knows that if he waits too long, the debtor's assets will have been exhausted by the demands of the quicker creditors and he will recover nothing. The creditors race to the courthouse, all demanding immediate payment of their entire debt. Like piranhas, they make short work of the debtor, who might have survived to pay off more of his debts with a little bit of reorganization—or at least might have more equitably fed the slower piranhas.
>
> Federal bankruptcy law seeks to avoid this scenario by "creat[ing] a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir.1996). The filing of a bankruptcy petition brings a bankruptcy estate into being and triggers an automatic stay, which prevents creditors from enforcing their claims, thus preserving the debtor's assets for ultimate distribution by the bankruptcy trustee. See 11 U.S.C. §§ 301–303, 362; see also 1 Collier on Bankruptcy ¶ 1.03[2][b], at 1-24 to 1-25.

394 F.3d at 1203 (citations omitted).  As described by the Supreme Court in *Harris v. Viegelahn*, 575 U.S. 510 (2015),

> Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate. [11 U.S.C] § 541(a)(1). A Chapter 7 trustee is then charged with selling the property in the estate, § 704(a)(1), and distributing the proceeds to the debtor's creditors, § 726.

*Id.* at 513-514.

In order to effectuate a prompt liquidation of the debtor's assets to facilitate an equitable distribution to creditors in Chapter 7, the Bankruptcy Code authorizes and directs the trustee to fulfill certain duties in administering the bankruptcy estate as specified in 11 U.S.C. § 704, which provides in pertinent part as follows:

(a)  The trustee shall---

    (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

***

    (5) if a purpose would be served, examine proofs of claim and object to the allowance of any claim that is improper;

***

    (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee;

****

11 U.S.C. § 704(a)(1), (5) and (9).

    In this case, Trustee seeks to administer the bankruptcy estate in this case by collecting, liquidating and distributing the assets of the bankruptcy estate, which includes the unfinished film footage and related copyright and the claims it has against Whose Dog and Franco.  In order to collect and liquidate assets of the estate and to make an equitable distribution to creditors entitled to payment of their allowed claims, Trustee must litigate the issues relating to ownership of the unfinished film footage and related copyright and the right of the estate to sell these assets as Whose Dog and Franco had challenged the rights of the estate to ownership of these assets and to sell them, though Whose Dog and Franco now admit that the estate owns the film footage and related copyright, but still disputing the right of the estate to sell them by insisting on conditions of sale.

    Before Debtor filed this bankruptcy case, on or about May 1, 2020, Whose Dog commenced an arbitration proceeding against Debtor by filing its arbitration demand seeking declaratory relief that it is not in breach of the "Franco, A Documentary" written agreement, that Debtor has not complied with the agreement and does not have the right to sell or otherwise exploit the unfinished motion picture and that Debtor does not have the right to use Franco's name and likeness.  Exhibit 1 to Motion.  On or about May 20, 2020, Debtor filed an answering statement and counterclaims in the arbitration

proceeding against Whose Dog and Franco regarding the written agreement for breach of contract, anticipatory breach of contract, breach of the covenant of good faith and fair dealing and promissory estoppel.  Exhibit 2 to Motion.  In response, on or about June 4, 2020 and November 13, 2020, Whose Dog and Franco filed answers in the arbitration proceeding responding to Debtor's counterclaims, and Franco filed his own counterclaim against Debtor for declaratory relief that he is not in breach of the agreement, that Debtor has not complied with the agreement and does not have the right to sell or otherwise exploit the unfinished motion picture, that Debtor may not use Franco's name or likeness without his prior approval and that the time for Debtor's performance under the agreement has expired or the agreement is no longer enforceable.  Exhibits 3 and 4 to Motion.  Debtor's filing of its Chapter 7 bankruptcy petition on December 21, 2020 commenced this bankruptcy case, which stayed the arbitration proceeding under the automatic stay provisions of 11 U.S.C. § 362.  Petition, Docket No. 1 in Main Bankruptcy Case.

In this bankruptcy case, Whose Dog commenced this adversary proceeding on October 12, 2021, invoking the jurisdiction of this court and subjecting it to the court's jurisdiction, by filing its complaint for declaratory and injunctive relief that it was the owner of the film footage and related copyright.  Complaint, Docket No. 1.  The adversary proceeding is a core matter.  11 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate, i.e., whether the assets are property of the estate under 11 U.S.C. § 541); *see also,* Complaint, Docket No. 1, ¶ 3 ("This is a core proceeding under 28 U.S.C. § 157 (b).").  On October 12, 2021, Whose Dog filed a motion for preliminary injunction.  Docket No. 2.

On November 11, 2021, Trustee filed an answer to Whose Dog's complaint, but did not assert any counterclaim.  Docket No. 16.  In his answer, Trustee alleged in his second affirmative defense for bad faith as follows:

> The Complaint should be dismissed because it was filed in bad faith and for an improper purpose.  Plaintiff has initiated an arbitration proceeding asserting the same claims as set forth in the Complaint.  As such, the Complaint

is an improper attempt to compel the Trustee to engage in litigation over claims that the Trustee has not decided to pursue.  In addition, the Complaint seeks to circumvent the Trustee's motion, pending in e bankruptcy case, seeking authority to implement a sale process for, *inter alia,* the bankruptcy estates's claims and causes of action regarding the Agreement, As such, the Complaint is an attempt to frustrate and impede the Trustee's statutory responsibility to administer assets of the estate.

Answer, Docket No. 16 at 5.

On November 22, 2021, Whose Dog and Franco filed proofs of claim in this bankruptcy, invoking the jurisdiction of this court and subjecting them to the court's jurisdiction.  Claims Nos. 6 and 7, Claims Register.  Whose Dog's claim was for declaratory relief and attorneys' fees against Debtor in an amount to be determined and attached a copy of its arbitration demand to the proof of claim.  Claim No. 6.  Franco's claim was for damages for alleged misuse of his name and likeness by Debtor in the amount of $1,000,000.  Claim No. 7.  Whose Dog's and Franco's proofs of claim are core matters.  11 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

A total of six creditors filed timely proofs of claim in this Chapter 7 bankruptcy case, including Whose Dog and Franco as discussed above.  The other creditors filing proofs of claim were: (1) the California Franchise Tax Board for alleged unpaid prepetition corporate franchise taxes in the amount of $7,790.84[8]; (2) Jeffrey Fisher for an alleged business loan in the amount of $191,443.77; (3), U.S. Bank for alleged credit card debt in the amount of $26,768.60; and (4) Lisa Vangellow, Debtor's principal, an insider under 11 U.S.C. § 101(31)(C) for alleged compensation and expenses in the amount of $180,000.00.  Claims Register.  Based on its bankruptcy schedules, Debtor's only assets are its rights in the unfinished film, "Franco, A Documentary," valued by Debtor at $850,000.00, and it appears that the film was its only business. Petition, Main Bankruptcy Case Docket No. 1.

On January 23, 2023, the court entered an order approving a stipulation between

---

[8]  The Franchise Tax Board also filed a request for payment of an administrative expense claim for unpaid postpetition corporate franchise taxes now amended in the amount of $2,690.58.  Claims Register.

Whose Dog and Trustee for withdrawal of Whose Dog's motion for preliminary

injunction based on Trustee's agreement to give 45 days advance notice of any effort to

market or sell the film footage and related copyright.  Docket No. 44.

On February 21, 2023, Whose Dog filed a motion to amend its complaint to add a

new party, Debtor's principal, Lisa Vangellow (Docket No. 47), to which Trustee filed

opposition on February 28, 2023 (Docket No. 48).  Whose Dog filed a notice of

withdrawal of its motion to amend on November 13, 2023, which the court approved by

order filed and entered on November 14, 2023 (Docket Nos. 67 and 69).  Whose Dog

only withdrew its motion to amend the complaint after the court posted a tentative ruling

which was adverse to it (see attachment hereto).

Also, on November 13, 2023, Whose Dog filed a motion for voluntary dismissal of

its complaint.  Docket No. 66.  While the motion of Whose Dog for voluntary dismissal of

the complaint was pending, on December 14, 2023, Trustee filed a motion to amend his

answer and to assert a Counterclaim setting forth his claims for relief for declaratory

relief that the estate owned the film footage and related copyright and had the right to

sell these assets, that objected to Whose Dog's and Franco's proofs of claim and

contractual and quasi-contractual claims against Whose Dog and Franco arising out of

the "Franco, A Documentary" written agreement (Docket No. 74).  At a hearing on

January 16, 2024, the court granted both Whose Dog's motion for voluntary dismissal of

its adversary complaint and Trustee's motion to amend its answer and to assert his

counterclaim, which are memorialized in formal orders filed and entered on January 18

and 22, 2024 (Docket No. 90 and 96).  On January 17, 2024, Trustee filed his

Counterclaim asserting his claims for relief against Whose Dog and Franco.  As

previously discussed, Trustee's claims for relief in his Counterclaim are core

proceedings under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (N) and (O).

The issues in the arbitration proceeding raised by the arbitration pleadings,

Whose Dog's arbitration demand, Debtor's answering statement and counterclaims and

Franco's answer and counterclaim all relate to their written agreement for "Franco, A

Documentary," that is, contractual and quasi-contractual claims for declaratory and monetary relief whether each of them breached the agreement, their respective liabilities for such breaches, and which party or parties owns and has the rights to sell or otherwise exploit the motion picture or intellectual property relating to it, such as the unfinished film footage and related copyright.  The issues in the adversary proceeding raised by Trustee's Counterclaim and by Whose Dog's and Franco's proofs of claim filed in this bankruptcy case also relate to the written agreement between Whose Dog, Franco and Debtor for "Franco, A Documentary," that is, contractual and quasi-contractual claims for declaratory and monetary relief whether each of them breached the agreement, their respective liabilities for such breaches, and which party or parties own(s) and has or have the rights to sell or otherwise exploit the motion picture or intellectual property relating to it, such as the unfinished film footage and related copyright.  Whose Dog and Franco do not dispute that the claims in the arbitration and in the adversary proceeding are the same as they argue that the claims in the adversary proceeding were raised prepetition in the arbitration and arose exclusively under the written agreement, but argue that the claims are non-core and are most appropriately dealt with in the arbitration.  Motion, Docket No. 104 at 19-21 (internal page citation at 14-16).

In order for Trustee to complete his statutory duties to administer the bankruptcy estate, he needs to litigate the rights of ownership and sale of the unfinished film footage and related copyright, the estate's contractual and quasi-contractual claims against Whose Dog and Franco and the allowance or disallowance of the claims of Whose Dog and Franco in order to collect and liquidate the estate's assets and to make distributions of the assets on claims against the estate.

Resolution of claims whether in arbitration or in the adversary proceeding will impact Trustee's duties to administer the bankruptcy estate to collect, liquidate and distribute assets of the estate.  Although Whose Dog and Franco acknowledge that the film footage and related copyright are property of the estate, they contest the right of

1   Trustee to sell these assets of the estate in derogation of their rights under the

2   agreement, which dispute raised by Trustee's declaratory relief claims as to ownership

3   and right to sell these assets is a core matter under 11 U.S.C. § 157(b)(2)(A), (C) and

4   (N) (matters of estate administration, counterclaim of the estate against persons filing

5   claims against the estate and orders for sale of estate assets).  The dispute has an

6   adverse impact on Trustee's ability to collect and liquidate these assets which are

7   property of the estate in order to make distributions to creditors.  Trustee's contractual

8   and quasi-contractual claims against Whose Dog and Franco are assets of the

9   bankruptcy estate, which he is trying to collect and liquidate through determinations of

10  the validity of these monetary claims in the adversary proceeding, and the disputes with

11  Whose Dog and Franco over these claims whether the claims are valid and have value

12  are core matters under 11 U.S.C. §.157(b)(2)(A) and (C) (matters of estate

13  administration and counterclaims of the estate against persons filing claims against the

14  estate).   Trustee's claims objecting to the proofs of claim of Whose Dog and Franco are

15  disputes over the allowance or disallowance of such proofs of claim are core matters

16  under 11 U.S.C. §.157(b)(2)(A), (B) and (C) (matters of estate administration, allowance

17  or disallowance of claims against the estate and counterclaims of the estate against

18  persons filing claims against the estate) and must be resolved in order for Trustee to

19  make distributions of the assets of the estate to creditors.

20          The court agrees with Trustee that arbitration would conflict with the purposes of

21  the Bankruptcy Code because allowing an arbitrator to decide issues that are so closely

22  intertwined with allowance and disallowance of claims, determination of assets of

23  property of the bankruptcy estate and their liquidation would 'conflict with the underlying

24  purposes of the Bankruptcy Code.  Allowance and disallowance of claims filed against

25  the estate, such as those filed by Whose Dog and Franco, and determinations whether

26  an asset is property of the bankruptcy estate and whether such property can be sold by

27  the estate are core bankruptcy functions for the bankruptcy court to make under the

28  Bankruptcy Code affecting the administration of the bankruptcy estate.  Compelling

1   arbitration of the Trustee's claims would allow an arbitrator to make rulings affecting the

2   administration of the bankruptcy estate in this case, including the allowance and

3   disallowance of claims and determinations of ownership of property which may be

4   property of the bankruptcy estate and whether such property can be sold and under

5   what conditions.  Thus, compelling arbitration would make Trustee's administration of

6   the estate in collecting, liquidating and distribution of assets of the estate dependent on

7   the schedule and determinations of an outside party, the arbitrator, which would

8   undermine the purposes of having bankruptcy law issues decided by bankruptcy courts;

9   of centralizing resolution of bankruptcy disputes; and of protecting parties from

10  piecemeal litigation.

11          In its tentative ruling on the motion, the court indicated that it would not compel

12  arbitration on Trustee's first and second claims for relief for declaratory relief and eighth

13  and ninth claims for relief objecting to the claims of Whose Dog and Franco because

14  determination of whether assets are property of the estate and whether such assets

15  may be sold and allowance or disallowance of claims are fundamental core functions of

16  the bankruptcy court and should be decided by this court, even though the issues raised

17  by these claims are intertwined with the other claims that Whose Dog and Franco seek

18  to compel arbitration.  As the court also noted, Whose Dog and Franco in filing their

19  proofs of claim against the estate in the bankruptcy case have subjected themselves to

20  the bankruptcy court jurisdiction.  But compelling arbitration on some but not all claims

21  in Trustee's counterclaim would be contrary to Bankruptcy Code purposes of having

22  bankruptcy law issues decided by bankruptcy courts; of centralizing resolution of

23  bankruptcy disputes; and of protecting parties from piecemeal litigation.  Having

24  litigation of claims involving the same issues in two forums, arbitration and bankruptcy

25  court, would result in piecemeal litigation and its attendant additional cost to the estate

26  and the other parties and would be inconsistent with Bankruptcy Code purposes of

27  having bankruptcy law issues raised by the core matters here decided by bankruptcy

28  courts and centralized resolution of bankruptcy disputes.   Whose Dog and Franco in

1   their reply and supplemental briefing do not argue under the *Thorpe Insulation*

2   framework that arbitration of core matters here would not conflict with the underlying

3   purposes of the Bankruptcy Code as their argument is that Trustee's claims are all non-

4   core and as such, the bankruptcy court lacks discretion to refuse to compel arbitration of

5   such non-core matters.  Reply, Docket No. 112 at 4-6; Supplemental Brief of Whose

6   Dog and Franco, Docket No. 113 at 3-6 (internal page citation at 1-4).

7            As a practical matter, compelling arbitration would adversely affect the

8   bankruptcy estate and the creditors as attested to by Trustee, the estate has no funds to

9   participate in arbitration, and thus, it would be in risk of default in such proceedings

10  resulting in adverse determinations regarding its claimed ownership of assets, including

11  the unfinished film footage and related copyright, and whether Debtor had valid claims

12  against Whose Dog and Franco.  Thus, compelling arbitration would adversely affect

13  the estate and the creditors since Trustee would be unable to defend their interests due

14  to the lack of financial resources, regardless of the merits of the estate's claims,

15  whereas the estate could defend their interests in the pending adversary proceeding

16  before this court.  Although the claims universe in this case as shown on the claims

17  register is not large, six creditors who filed timely proofs of claim totaling over $1.4

18  million, including an unspecified amount claimed by Whose Dog.  Excluding the claims

19  of Whose Dog, Franco and Vangellow, the parties directly involved in the disputes over

20  "Franco, A Documentary," the other creditors filed timely proofs of claim with a claimed

21  total value of $226,003.21.  Thus, creditors other than those directly involved in the

22  "Franco, A Documentary" would be affected by the arbitration.

23           Based on the foregoing, the court will deny the motion to compel arbitration.

24           Regarding stay pending arbitration, Whose Dog and Franco argue that if there

25  are any issues referable to arbitration under a written agreement for such arbitration, a

26  stay pending arbitration is mandatory under 9 U.S.C. § 3. Supplemental Brief of Whose

27  Dog and Franco, Docket No. 113 at 6 (internal page citation at 4).  The court disagrees

28  because if arbitration is not compelled due to a conflict with the purposes of the

1  Bankruptcy Code under cases such as *Thorpe Insulation Co.,* there is no reason to

2  impose a stay because the issues are being excepted from compelled arbitration.

3       Regarding stay pending appeal, Whose Dog and Franco argue that if the court

4  denies their motion to compel arbitration, the court should automatically grant stay

5  pending appeal, citing the Supreme Court's decision in *Coinbase, Inc. v. Bielski,* 599

6  U.S. 736 (2023).  In this regard, the court agrees with Trustee in his opposition (Docket

7  No. 109 at 10-11 (internal page citation at 5-6) that based on the Supreme Court's

8  discussion in footnote 6 of its opinion in *Coinbase, Inc. v. Bielski* that the express

9  reference to 28 U.S.C. § 158(d)(2)(D) that an appeal of an order of the bankruptcy court

10 does not stay a proceeding of the bankruptcy court indicated clear congressional intent

11 that there would be no automatic stay pending appeal of a bankruptcy court order.

12 *Coinbase, Inc. v. Bielski,* 599 U.S. at 744 and n. 6.

13      However, the court could consider an application for a discretionary stay of its

14 orders pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8007.  The

15 four factors a court considers in exercising its discretion to grant stay pending appeal

16 are: "(1) whether the stay applicant has made a strong showing that he is likely to

17 succeed on the merits; (2) whether the applicant will be irreparably injured absent a

18 stay; (3) whether issuance of the stay will substantially injure the other parties interested

19 in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418,

20 434 (2009) (citation omitted).

21      The court will grant a limited stay pending appeal under the circumstances of this

22 case.  First, the court notes that Whose Dog has a pending appeal before the Ninth

23 Circuit on the court's order denying relief from the automatic stay for Whose Dog and

24 Franco to proceed with the arbitration proceeding.  Most likely, the issue of whether the

25 arbitration may or may not proceed will be decided upon resolution of that appeal, and

26 the Ninth Circuit is considering scheduling oral argument on the appeal for one of its

27 July 2024 argument calendars as indicated on the case docket, and the appellate ruling

28 may have an impact on any appeal of the order on the motion to compel arbitration.

1 | Regarding the factor of likelihood of success on the merits, while the court denies the
2 | motion to compel, the court determines that Whose Dog and Franco have more than a
3 | negligible chance of succeeding on the merits (more than 25% probability of success).
4 | Regarding the factor of irreparable injury, the court acknowledges that if arbitration is
5 | not compelled, Whose Dog and Franco claim that they may lose their contractual right
6 | to arbitration if the court proceeds and determines that their claim of irreparable injury
7 | was compromised when they filed proofs of claim and Whose Dog commenced an
8 | adversary proceeding to litigate the same issues in the arbitration, which invoked the
9 | jurisdiction of the court, subjecting them to the court's jurisdiction, to resolve these
10 | issues.  Whose Dog and Franco belatedly seek to compel arbitration after subjecting
11 | themselves to the court's jurisdiction over these issues by filing proofs of claim and by
12 | initiating this adversary proceeding.  Nevertheless, since the court has not yet resolved
13 | the issues on the merits, Whose Dog and Franco have some claim of irreparable injury,
14 | though undermined by their actions invoking the court's jurisdiction by filing claims
15 | against the estate in this bankruptcy case and initiating adversary proceedings to litigate
16 | the same issues as in arbitration.  Regarding the factor of whether a stay pending
17 | appeal will substantially injure other parties, the court determines that this factor favors
18 | a limited stay as Trustee only filed his claims for relief in his Counterclaim in January
19 | 2024, three months ago, and a delay of several months to a resolution of the appeal by
20 | the Ninth Circuit will not substantially injure his interests as the status quo regarding the
21 | arbitration being subject to automatic stay is preserved pending the outcome of Whose
22 | Dog's appeal of the stay relief matter in the Ninth Circuit.  Regarding the factor of the
23 | public interest, the court determines that this factor is neutral as this adversary
24 | proceeding is a dispute among private parties.

25 |         Accordingly, the court will order a limited stay pending appeal on the conditions
26 | that (1) Whose Dog and Franco serve and file their answers to Trustee's claims for relief
27 | in his Counterclaim as set forth in the court's memorandum decision and order on their
28 | motion to dismiss the Counterclaim being filed and entered concurrently herewith; (2)

1  the parties appear before the court for a status conference on August 27, 2024 at 1:30

2  p.m. regarding the status of Whose Dog's appeal before the Ninth Circuit on the stay

3  relief order; and (3) this adversary proceeding is otherwise stayed until the status

4  conference on August 27, 2024.

5      Regarding Trustee's request for sanctions under Local Bankruptcy Rule 9013-

6  1(l), the court will not grant such request as it is not made in a proper motion under

7  Federal Rule of Bankruptcy Procedure 9013 and Local Bankruptcy Rule 9013-1(d).  The

8  court does not consider appropriate to impose sanctions on Whose Dog and Franco

9  under Local Bankruptcy Rule 9013-1(l) because their motion to compel arbitration is

10  different from Whose Dog's motion for stay relief which the court previously denied in

11  that the relief sought is different.  That is, in the prior motion for stay relief, Whose Dog,

12  sought an order lifting the automatic stay in the underlying bankruptcy case under 11

13  U.S.C. § 362(d) to allow it to proceed with its arbitration proceeding with Debtor.  In the

14  current motion for relief, Whose Dog and Franco seek an order of this court pursuant to

15  the FAA, 9 U.S.C. §§ 1 *et seq*., compelling the trustee as representative of the Debtor's

16  bankruptcy estate to submit to the arbitration proceeding.  The first motion did not seek

17  an order compelling the other party to arbitrate, but to allow the moving party to proceed

18  in the arbitration venue while other proceedings in this bankruptcy case could continue

19  in this court.  The second motion to compel arbitration seeks an order compelling the

20  trustee to submit to arbitration in that venue and stay proceedings before this court in

21  this bankruptcy case relating to the disputes in arbitration.  Because the motions are

22  different, Local Bankruptcy Rule 9013-1(l) is inapplicable, and sanctions are not

23  appropriate.  Therefore, the court will decline on its own motion to impose sanctions

24  under Local Bankruptcy Rule 9013-1(l) on Whose Dog and Franco as Trustee requests

25  and denies such request.

26      For the foregoing reasons, the court orders as follows:

27      1.  The motion to compel arbitration is denied.

28      2.  The motion for stay pending appeal is granted in part and denied in part.

3. Whose Dog and Franco must serve and file their answers to Trustee's claims for relief in the Counterclaim in accordance with the court's memorandum decision and order on their motion to dismiss being filed and entered concurrently herewith.

4. The court will decline to impose sanctions on Whose Dog and Franco as requested by Trustee.

5. A status conference in this adversary proceeding is set for August 27, 2024 at 1:30 p.m. in Courtroom 1675, Roybal Federal Building, 255 East Temple Street, Los Angeles, California   90012.

6. The adversary proceeding is otherwise stayed until the status conference on August 27, 2024.

7. If Whose Dog's appeal on the stay relief matter is resolved by a decision of the Ninth Circuit before the status conference on August 27, 2024, the parties are ordered to file notice of the Ninth Circuit's decision within 7 days of receiving notice of the decision.

IT IS SO ORDERED.

###

Date: April 22, 2024

_____
Robert Kwan
United States Bankruptcy Judge

ATTACHMENT "A"– TENTATIVE RULING ON MOTION TO COMPEL
ARBITRATION POSTED ON THE COURT'S WEBSITE ON MARCH 25, 2024

Updated tentative ruling as of 3/25/24.

Federal Arbitration Act – General Requirements

"The Federal Arbitration Act (FAA) requires courts to compel arbitration of claims
covered by an enforceable arbitration agreement."  Oberstein v. Live Nation
Entertainment, Inc., 60 F.4th 505, 509-510 (9th Cir. 2023), citing 9 U.S.C. § 3. "The FAA
limits the courts' role to 'determining whether a valid arbitration agreement exists and, if
so, whether the agreement encompasses the dispute at issue.'" Id., citing and quoting,
Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). "In
determining whether the parties have agreed to arbitrate a particular dispute, federal
courts apply state-law principles of contract formation."  Id. citing and quoting, Berman
v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022) (citing First Options of
Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). "Upon
being satisfied of the existence of a valid arbitration agreement, the court must order the
parties to proceed to arbitration in accordance with the terms of the agreement." Id.
citing, 9 U.S.C. § 4.

Federal Arbitration Act – Applicability

Section 2 of the FAA provides that:

A written provision in any maritime transaction or a contract evidencing a transaction
involving commerce to settle by arbitration a controversy thereafter arising out of such
contract or transaction, or the refusal to perform the whole or any part thereof, or an
agreement in writing to submit to arbitration an existing controversy arising out of such a
contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon
such grounds as exist at law or in equity for the revocation of any contract or as
otherwise provided in chapter 4.

9 U.S.C.A. § 2. "The FAA applies to any contract affecting interstate commerce."
Bernsley v. Barclay Bank Delaware, 657 F.Supp.3d 1327, 1336 (C.D. Cal. 2023)
(internal quotation marks omitted), citing and quoting, Yahoo! Inc. v. Iversen, 836
F.Supp.2d 1007, 1009 (N.D. Cal. 2011); see Circuit City Stores, Inc. v. Adams, 532 U.S.
105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). "The 'interstate commerce' provision
has been interpreted broadly, embracing any agreement that in its operation directly or
indirectly affects commerce between states in any fashion." Id. (internal quotation marks
omitted), citing and quoting, Krause v. Barclays Bank Delaware, No. 2:13-CV-01734-
MCE-AC, 2013 WL 6145261, at *2 (E.D. Cal. Nov. 21, 2013).

It appears that the FAA is applicable because the contract evidences a transaction
involving interstate commerce for the making and distribution of the Franco
documentary in interstate commerce.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Arbitration Act - Legal Standard for a Motion to Compel Arbitration

"Congress enacted the Federal Arbitration Act ("FAA") 'to move the parties to an
arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"
Bernsley v. Barclay Bank Delaware, 657 F.Supp.3d at 1333, citing and quoting, Moses
H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22–25, 103 S.Ct. 927, 74
L.Ed.2d 765 (1983). "The FAA reflects a 'national policy favoring arbitration,'" id., citing
and quoting, Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917
(2008) (citation omitted), and the principal purpose of the FAA is 'to ensur[e] that private
arbitration agreements are enforced according to their terms,'" id., citing and quoting,
AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742
(2011) (citation omitted)).

"The FAA provides that contractual arbitration agreements 'shall be valid, irrevocable,
and enforceable, save upon such grounds as exist at law or in equity for the revocation
of any contract.'" Id, citing and quoting, 9 U.S.C. § 2. "Because the FAA mandates that
'district courts shall direct the parties to proceed to arbitration on issues as to which an
arbitration agreement has been signed[,]' the FAA limits courts' involvement to
'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether
the agreement encompasses the dispute at issue.' " Id. (internal quotation marks
omitted), citing and quoting, Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th
Cir. 2008) (citation omitted)) (emphasis in original). "If these two requirements are met,
courts generally must compel arbitration." Id., citing, Farrow v. Fujitsu Am., Inc., 37 F.
Supp. 3d 1115, 1119 (N.D. Cal. 2014). "However, arbitration clauses 'may be
invalidated by generally applicable contract defenses, such as fraud, duress, or
unconscionability.'" Id., citing and quoting, Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S.
63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (citation omitted). "'While the Court may
not review the merits of the underlying case in deciding a motion to compel arbitration, it
may consider the pleadings, documents of uncontested validity, and affidavits submitted
by either party.'" Id., citing and quoting, Weber v. Amazon.com, Inc., No. CV 17-8868-
GW(EX), 2018 WL 6016975, at *5 (C.D. Cal. June 4, 2018) (cleaned up and citations
omitted).

"The party seeking to enforce an arbitration agreement bears the burden of showing
that the agreement exists and that its terms bind the other party." Id. (internal quotation
marks omitted), citing and quoting, Gelow v. Cent. Pac. Mortg. Corp., 560 F.Supp.2d
972, 978 (E.D. Cal. 2008); see also Sanford v. MemberWorks, Inc., 483 F.3d 956, 963
n. 9 (9th Cir. 2007) ("The district court, when considering a motion to compel arbitration
which is opposed on the ground that no agreement to arbitrate had been made between
the parties, should give to the opposing party the benefit of all reasonable doubts and
inferences that may arise.") (internal quotation marks omitted). "Once the moving party
has met this initial burden, the party opposing arbitration bears the burden of
establishing that the arbitration agreement does not apply." Id. citing, Westinghouse
Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513, 518 (9th Cir. 1991).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id., citing and quoting, Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25, 103 S.Ct. at 941.

It appears that Whose Dog as the party seeking to enforce an arbitration agreement has met its initial burden of showing that an arbitration agreement exists and its terms bind the other party, the trustee, as Debtor's successor in interest.  That is, it appears that a valid agreement to arbitrate exists, and the agreement encompasses the disputes at issue, i.e., the contractual and quasi-contractual claims asserted by the trustee in his counterclaims fall within the terms of the arbitration agreement, stating: "Any action, controversy, claim, dispute, suit or proceeding arising out of or related to the subject matter of, or transactions contemplated by, this Agreement ('Action') is subject to binding arbitration in English in Los Angeles, California, pursuant to the Commercial Arbitration Rules of the American Arbitration Association ('AAA') as said rules may be amended from time to time with full rights of discovery as permitted in accordance with California law.")  (Franco is not a party to the contractual agreement and therefore lacks standing to compel arbitration for an agreement of which he is not a party.)

It appears that the trustee as the party opposing arbitration has not shown that the arbitration agreement does not apply or otherwise should not be compelled as to noncore state law claims.  The trustee's defense is that his counterclaims are excepted from arbitration based on the rulings of the court and the Bankruptcy Appellate Panel that the arbitration of the claims would conflict with the underlying purposes of the Bankruptcy Code.  The trustee's contractual and quasi-contractual claims (3rd through 7th counterclaims) were not before the court and BAP on the stay relief motion and are noncore state law claims that do not present a conflict sufficient to override the presumption in favor of arbitration.

Bankruptcy Court discretion to deny a motion to compel arbitration

As stated in In re Thorpe Insulation Co., 671 F.3d 1011, 1021 (9th Cir. 2012), in a core proceeding, "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code."  However, "non-core proceedings 'are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration, where as core proceedings 'implicate more pressing bankruptcy concerns.'" Id.

The trustee's first, second, eighth and ninth counterclaims for declaratory relief regarding ownership of the film footage and related copyright as property of the estate, right to sell such property of the estate, and objecting to claims of Whose Dog and Franco are arbitable but core claims that the bankruptcy court has discretion to decline to enforce arbitration as it would conflict with the underlying purposes of the Bankruptcy Code.  This is consistent with the rulings of the court and the BAP to deny stay relief.

1
2
3

The trustee's third through seventh counterclaims based on contractual and quasi-contractual claims are arbitable but noncore claims that the bankruptcy court lacks discretion to decline to enforce arbitration.  These claims are different from the ones considered by the court and the BAP in their rulings on the stay relief motion.

4

Stay pending appeal – Legal Standard

5
6
7
8

The four factors a court considers in exercising its discretion to grant stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (citation omitted).

9
10
11
12
13
14

The court is inclined to grant stay pending appeal under the circumstances because Whose Dog and Franco have more than a negligible chance of succeeding on the merits of the partial denial of their motion to compel arbitration (25 to 49% probability of success), they may suffer irreparable injury in losing their contractual right to arbitration, the burden on the other party if stay pending appeal is grant means a short delay of administration of the estate as the issue of whether the court may decline to enforce arbitration is already on appeal to the Ninth Circuit on the stay relief matter and the fourth factor of public interest is neutral as the dispute is between private parties.

15

Conclusion:

16

Grant Whose Dog's motion to compel arbitration as to noncore claims (trustee's 3rd through 7th counterclaims).

17
18

Deny motion to compel arbitration as to core claims (trustee's 1st, 2nd, 8th and 9th counterclaims).

19

Grant Whose Dog's motion for stay pending appeal.

20
21

Decline trustee's request for the court to impose sanctions on its own motion under Local Bankruptcy Rule 9013-1(I) as the subject matters of this motion and the prior stay relief motion are different.

22
23

Appearances are required on 3/26/24, but counsel and self-represented parties must appear either in person in the courtroom or remotely through Zoom for Government in accordance with the court's remote appearance instructions.

24
25
26
27
28

ATTACHMENT "B" – TENTATIVE RULING ON WHOSE DOG'S MOTION TO AMEND ADVERSARY COMPLAINT POSTED ON THE COURT'S WEBSITE ON MARCH 10, 2023

Updated tentative ruling as of 3/10/23.

The court has reviewed the moving, opposing and reply papers regarding Plaintiff Whose Dog's motion for leave to amend its complaint.

Regarding the proposed amendment to add a third cause of action for breach of contract against the Debtor, there is no opposition to the motion as Defendant Trustee acknowledges the policy of liberality for amendment of pleadings under Federal Rule of Civil Procedure 15 made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7015.  Cause is shown by Whose Dog to amend and add this claim ifor the purpose of liquidating its contractual claim against the bankruptcy estate.  Thus, the court should grant the motion to amend to add the third cause of action against the Debtor.

Defendant Trustee opposes the motion on grounds that the proposed amendment to add a fourth cause of action against a new party, Vangellow, "has no legitimacy, is being asserted purely to harass and intimidate her, and is an abuse of process," and is thus futile. As noted by the parties, Trustee is in the unusual position of asserting arguments which are based on defenses of a third party, Vangellow, and not himself, and perhaps it is not so unusual in that his counsel was Vangellow's former counsel.

As noted by the Rutter Group treatise on Federal Civil Procedure Before Trial, California and Ninth Circuit edition, edited by District Judge Phillips and Chief Magistrate Judge Stevenson of our district court, "Ordinarily, courts do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend. (Challenges to the pleading are usually deferred until after leave to amend is granted and the amended pleading filed.)"  Phillips and Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California and Ninth Circuit Edition, ¶ 8:1514 (online edition, April 2022 update), *citing,* SAES Getters S.p.A. v. Aeronex, Inc. (SD CA 2002) 219 F.Supp.2d 1081, 1086 (citing text); Netbula, LLC v. Distinct Corp. (ND CA 2003) 212 FRD 534, 549 (citing text).

However, as the Rutter Guide also notes, "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal."  *Id., citing,* Carrico v. City & County of San Francisco (9th Cir. 2011) 656 F3d 1002, 1008; FDIC v. Conner (5th Cir. 1994) 20 F3d 1376, 1385—amendment futile if statute of limitations has run.

The Trustee argues that the statute of limitations on the proposed fourth cause of action against Vangellow for intentional interference with contractual relations of two years under California Code of Civil Procedure § 339 has run by the proposed amended complaint being filed by motion in February 2023.  See, e.g., In re Lockwood, 414 B.R.

593, 602 (Bankr. N.D. Cal. 2008) ("A cause of action for interference with economic relations must be commenced within two years of the alleged interference. Cal.Code Civ. Pro. § 339."); McWilliams v. Horton, 248 Cal.App.2d 447, 454-455 (1967).

The court does not see anything untoward by the Trustee raising what would be Vangellow's statute of limitations defense as the court has discretion not to grant leave to amend if the amendment is futile.  Evidently, the Trustee knows that Vangellow would assert such an affirmative defense as he is now represented by her former counsel who probably knows that she would assert the defense and that it would be an administrative expense burden on the estate having to litigate the merits of the proposed amendment if it is futile.

The proposed amended complaint does not specifically allege the dates on which Vangellow committed the acts that constitute the alleged interference with contract as the proposed amended complaint only refers to alleged acts by the Debtor Orchid Child and alleges that Vangellow "caused" the Debtor to breach the contract between it and Whose Dog.  Based on the court's reading of the proposed amended complaint, it appears that in the proposed amended complaint, Whose Dog alleges that the acts that constituted the alleged breach of contract by the Debtor "caused" by Vangellow occurred before the petition date of December 21, 2020, which is more than two years from the date of the filing of the motion to amend on February 21, 2023.

Trustee argues that the proposed claim against Vangellow is thus time barred.  In its reply, citing Federal Rule of Civil Procedure 15(c)(1)(B), Whose Dog argues that the proposed claim is not time barred because it "relates back" to the filing of the original complaint on October 21, 2021, within two years of the petition date of December 21, 2020.  While the petition date may be considered a point of reference, the proposed complaint is still unclear as to when the alleged acts of contractual interference occurred to fall within the two year limitations period before the filing of the original complaint on October 21, 2021, that is, two years back to October 21, 2019. For the purposes of the motion, the court assumes arguendo that the alleged acts by Vangellow were on or after October 21, 2019.

In any event, it is not enough as Whose Dog argues to show that the amended complaint meets the standard of Federal Rule of Civil Procedure 15(c)(1)(B) being a claim arising out of the conduct, transaction or occurrence set out or attempted to be set out in the original pleading.  Because Vangellow is a new party to be added to the adversary proceeding, Whose Dog's amended complaint must also meet the stricter standard of Federal Rule of Civil Procedure 15(c)(1)(C) relating to amendment of pleadings to name new parties.  See also, Federal Rule of Bankruptcy Procedure 7015 (making Federal Rule of Civil Procedure 15 applicable to adversary proceedings); see also, Leslie v. Ace Gallery New York Corp. (In re Art & Architecture Books of the 21st Century), No. 2:13-bk-14135-RK Chapter 11, Adv. No. 2:15-ap-01679-RK, 2021 WL 1821869 (Bankr. C.D. Cal. May 5, 2021); Phillips and Stevenson, Rutter Group Practice

Guide: Federal Civil Procedure Before Trial, California and Ninth Circuit Edition, ¶¶ 8:1635-8:1679 .

Federal Rule of Civil Procedure 15(c)(1) states:

(c)(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct or occurrence set out---or attempted to be set out---in the original pleading;

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c )(1)(B) is satisfied and if, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment:(i) received such notice of the action that it will not be prejudiced in defending the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Federal Rule of Civil Procedure 15(c)(1).

Whose Dog has not shown that the Rule 15(c)(1)(C) standard is met as to the proposed new party, Vangellow, that within the period provided under Federal Rule of Civil Procedure 4(m) [i.e., within 90 days of filing of the original complaint) she received notice of the action in that she would not be prejudiced in defending the merits and knew or should have known that the action would have been brought against her, but for a mistake concerning the proper party's identity.  It is difficult to see how Whose Dog can show this as Whose Dog in the original complaint only asserted claims against the bankruptcy estate for declaratory and injunctive relief that it (Whose Dog) owns the film footage, and not for breach of contract, let alone, tortious interference with contract, against the Debtor or its principal, Vangellow.  Moreover, as the Trustee argues, Whose Dog has had "years" to sue Vangellow, a nondebtor party, which could have been accomplished by a separate suit in state court or even an earlier amendment of the complaint in this adversary.  Unless Whose Dog can make a satisfactory showing under Rule 15(c)(1)(C), the court is inclined to deny the motion as to that proposed claim as futile based on the two year statute of limitations under California Code of Civil Procedure § 339 and the application of Federal Rule of Civil Procedure 15(c)(1)(C).  Based on this record, it does not look like Whose Dog was intending to sue Vangellow by the expiration of the statute of limitations by targeting the wrong defendant and discovering the identity of the party after the statute has run because she would not have been named as a party defendant in the original complaint asserting only claims for declaratory and injunctive relief against the Trustee as the representative of the bankruptcy estate, the successor in interest to the Debtor, regarding ownership of the film footage.  See Phillips and Stevenson, Rutter Group Practice Guide: Federal Civil

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Procedure Before Trial, California and Ninth Circuit Edition, ¶¶ 8:1635-8:1636, citing inter alia, G.F. Co. v. Pan Ocean Shipping Co., Ltd., 23 F.3d 1498, 1503 (9th Cir. 1994).

The Trustee argues that Vangellow is protected by immunity from suit on grounds that there cannot be a contractual inference claim against a counterparty, here, the Debtor, and its agent, here, Vangellow.  See Allied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-515 (1994).  This is debatable as it appears that Vangellow may have at most an affirmative defense of manager's privilege if she acted in the interest of the Debtor as a contracting party.  See Aliya Medcare Finance, LLC v. Nickell, Case No. CV 14-07806 MMM (Ex), 2015 WL 11072180 (C.D. Cal. Sept. 25, 2015), at *16  citing Shapoff v. Scull, 222 Cal.App.3d 1457, 1464-1466 (1990), disapproved on other grounds by Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th at 510; see also, Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125-1127 (9th Cir. 2014) (dicta discussing possible limitations of the "not a stranger" doctrine of the California Supreme Court's holding in Allied Equipment Corp. v. Litton Saudi Arabia Ltd.).  The published case cited by the Trustee in Caliber Paving Co. v. Rexford Industrial Realty and Management, Inc., 54 Cal.App.5th 175 (2020) does not support his position as the appellate court reversed the trial court's holding that a landowner could not be sued for tortious contractual interference with a contract between a paving contractor and subcontractor.  The court does not resolve the issue of this particular defense as it should be asserted by Vangellow if she needs to address Whose Dog's proposed claim in the future and does not make any ruling that the proposed claim being filed against her is in bad faith.

The Trustee argues in the opposition that the court lacks jurisdiction over Whose Dog's proposed contractual interference claim against Vangellow outside the bankruptcy court's "related to" jurisdiction under 11 U.S.C. 1334 while Whose Dog argues in the reply that the claim arises out of the same transaction, occurrence or series or transactions or occurrence that form the bases of its claims against the bankruptcy estate.  Both sides make colorable arguments about the presence or lack of jurisdiction over the proposed fourth cause of action, and the jurisdictional issue should be best resolved on a more specifically and fully briefed motion to dismiss or for abstention on jurisdictional grounds.

At this stage of the adversary proceeding before the parties engage in full blown litigation, the court intends to inquire of the parties at the hearing whether it would be beneficial to have further mediation between the parties, which would include Vangellow as Whose Dog and its principal, Franco, want a resolution of their disputes with her regarding mutual release of claims.  The court has inquired with Bankruptcy Judge Zive, who said he could meet with the parties in April or May in a judicial settlement conference if they had an interest, which would not entail the further expense of a mediator's fee.

Appearances are required on 3/14/23, but counsel and self-represented parties must appear either in person in the courtroom or remotely through Zoom for Government in accordance with the court's remote appearance instructions.